Kennon, J.
The bill in this case states that on the 7th of June,. 1825, Ebenezer Roseberry purchased, at the public sale of the Maumee and Western Reserve road lands, out-lot No. 220, in the town of Perrysburg; that he paid for the same the sum of $29.75 in cash, at the date of the sale, and obtained from the superintendent a certificate of his purchase; that said sale was, in all respects, conducted according to the provisions of the act to provide for the construction of a road from the Maumee of Lake Erie to the Western Reserve, passed February 25, 1824, and the act amendatory thereto, passed February 7, 1825 ; that Quintus F.- Atkins, the superintendent of the road, made due report of said sale, which was ■ in due time deposited with the auditor of state, where it has remained ; that Ebenezer Roseberry died in 1826, without having received a deed for the lot from the State of Ohio; that on the 29th of January, 1833, the legislature of the state passed an act directing the governor to execute to the heirs of Roseberry a deed for' said lot; that in pursuance of such direction the governor, on the-26th of February, 1833, did execute such deed; that complainant has acquired the title from the other heirs; that on the 10th of January, 1828, John Hollister purchased the same lot from, the state, and obtained a deed from the governor for the same, which he now holds. The bill prays that the defendants may be compelled to convey the legal *title to the lot, which, it is claimed, they hold in trust only for complainant.
To this bill John Hollister pleads that, on the 2d of November, 1827, he purchased from the State of Ohio said lot, for $47.50, by applying that amount in part payment of the amount due to him from the state upon a contract, made on the 22d of June, 1825, with the superintendent of the road, for the construction of a part of said road; that in pursuance of said purchase the lot was, on. *303 the 10th of January, 1828, conveyed to him by the governor; and that, when Hollister made the purchase, paid the purchase money, and received the conveyance, he had no notice of the purchase by said Roseberry, nor of any claim in favor of said Roseberry or his representatives.
The cause came on for hearing on the bill and plea, and the only •question therefore presented for the consideration of this court, is the sufficiency of this plea.
The cause is to be considered as if it had been set down for hearing on the plea, and the plea viewed as though it had been demurred to for insufficiency in an action at law.
This plea is therefore to be taken as true, and that the defendant was a bona fide purchaser, without notice in fact of the complainant’s claim; and the first question therefore to be considered is, whether he had constructive notice, or such notice as the law will ■conclusively impute to him.
A man may be a bona fide purchaser from A, without any notice •in fact that B had purchased the same land from A, and had his deed regularly placed upon record; still, as between B and the subsequent bona fide pur chaser, without notice in fact of the previous ■purchase, the law would not permit the second purchaser to prevail because he had no notice. He would be presumed to have had .notice, and such presumption would be conclusive.
Can any such presumption of law be raised in this case, notwithstanding the plea of a bona fide purchaser without notice?
*It is alleged that the land-belongs to the state, by grant of Congress, for the purpose of constructing a road from the Maumee -of Lake Erie to the line of the Connecticut Western Reserve; that it was made the duty (by an act of the legislature of Ohio) of the superintendent to sell these lands at public sale, and semi-annually to make return to the auditor of state a correct statement of the land sold, to whom, and at what price; that the superintendent did, in ■compliance with such duty, make such return immediately after the sale to complainant, and the same still remains to be seen on file in the auditor’s office; and this is claimed, in law, as a conclusive .presumption of notice to the defendant, who subsequently purchased. It is also alleged, by way of argument, but not so stated in the bill, that by the first section of an act amendatory to the act of 1824, passed in 1825, it was made the duty of the superintendent to keep correct plat of all the lands, etc., with a note of those etc., in *304 his office; and it is insisted that, as the presumption of law always is that an officer has done his duty, that it is to be presumed that such plat and note of sales were left in the office of the superintendent, and therefore that this plat and note were also notice to the defendant of complainant’s equity.
As to this last claim of notice, it is enough to say, that although the law would presume that the officer did his duty in this respect, and did keep such plat and note, yet he may not have done so; and in such case the defendant might well say he had no notice; and the question of notice or no notice in such case would be a question of fact, which could only be tried on an issue taken on the plea, and not on demurrer to the plea, which admits he had no notice, unless the law would conclusively presume such notice.
But it is expressly averred in the bill, and not denied by the plea, that the superintendent did make return to the auditor of state of the sale of this lot, to whom sold, and for how much. That return was on file in the auditor’s office at the time of the purchase by the defendant, and if he had seen such return, he *would not be a bona fide purchaser without notice. The plea shows that he did-not see the return or know of the same.
The question is therefore properly raised, whether the law makes this return of the superintendent notice, and conclusive notice, to-all subsequent purchasers.
By section 8 of our registry act (Swan’s old Stat. 267), all-deeds are required to be recorded within six months from the date-thereof; and if such deeds shall not be recorded within that time,, the same shall be deemed fraudulent as against subsequent purchasers, having no knowledge of the existence of such former deed: provided that such deed (or other instrument of writing for the incumbrance of land) may be recorded after the expiration of the six months from the date of such deed, and from the date of such-record shall be notice to any subsequent purchaser.
Under this section of the statute, all deeds recorded within six months from date are conclusive notice to subsequent purchasers; and so, also, if not recorded within that time, are conclusive notice,, from the date of the record, to all subsequent purchasers. In this case, the first deed made by the governor was to the defendants, so-that, if the legal title passed at all by that deed, it was vested in the defendant long before any deed had been made to complainants;, and the question arises, whether, by the act requiring the superin *305 tendent to make a return of Ms sales to tbe auditor of state, tbe defendant bad notice of tbe complainant’s prior equity. If it became necessary for tbe court to decide this question, we would be inclined to the opinion that this provision of the act was not intended to give notice to subsequent purchasers, but simply to enable the state to know how much money the superintendent had received, and from whom, and how much was still due the state, and to operate as a check on the superintendent himself, and not as a notice to subsequent purchasers. Upon this point, however, we give no opinion, but pass to the only other point in the case, namely, whether any title passed by the deed *under the second sale to the defendant. By the second section of the act above referred to'; the superintendent, appointed as by that act provided, is authorized to sell, after giving public notice in some newspaper, at public sale, the land*» donated by Congress to the state; such sale to be held at Low or Sandusky, and to be continued from day to day, from the ¡second Monday of May, 1824, until the second Monday of June next foil wing, or until any quantity of land not exceeding thirty thous- and acres should have been sold: provided that no part of said land 'Should be sold for less than one dollar and fifty cents per acre. By the 5th section it is provided, that after the second Monday of June, if the whole of said road shall not be contracted for, or if thirty tk< usand acres of said land shall not have been sold, the superinteu dent shall have power to enter into private contracts for such parts of said road as shall have remained uncontracted for, and may also sell, at private sale, as much of said land as, together with what shall have been theretofore sold, shall amount to thirty thousand .acres.
After the first public sales had been made, and after the time had arrived at which the superintendent was authorized to make private sales of these lands, the legislature, on the 7th of February, 1825, passed an act to amend the first-named act, by which the superintendent was required to cause the lands belonging to the State of Ohio, in the reservation at the foot of the rapids of the San-dusky river, adjoining to the road on each side thereof, to be surveyed into small lots, streets and alleys, of such number, size, form and width as he might deem most beneficial to the interests of the state; and also to cause to be made such surveys, as he might think necessary, of the lands belonging to the State of Ohio, in the reservation at the foot of the rapids of the Maumee of Lake Erie, *306, 307 and to canse a plat to be made of all the lands so surveyed belonging to the state ; one copy of which he was to transmit to the secretary of state, and retain another in his office, in which he was to note all sales by him made.
*By section 3 of this amendatory act, the superintendent was to sell at public auction to the highest bidder, on the first Monday of June, 1825, and for five days thereafter, at Lower ■Sandusky, all lands belonging to the State of Ohio, in the reservation at the rapids of the Sandusky and Maumee rivers, agreeably to the plat and surveys directed to bo made by this act, and the act to which this is an amendment; but no part of the land in these reservations was to be sold for less than seven dollars per acre.
Under this last act, and within the six days prescribed by the same, the ancestor of the complainant purchased and paid for this lot to the state. After the expiration of these six days, in which these lands were authorized to be sold at public sale, the superintendent might, possibly, sell any of the unsold lots at private sale, under the act of 1824. However that may be, it is very clear that the state never intended to authorize the superintendent to sell, •either at public or private sale, any of those lands which he had before sold and for which the state had received the full payment, and for which the superintendent had given to the purchaser a certificate announcing such payment.
The sale in this case was made to the defendant (probably at private sale) after the state had parted with all her equitable interest in the lot, and was made by the superintendent professing to act as agent of the state, authorized as such by a law of the state. The defendant contracted with this agent of the state, knowing that the agent was not authorized to make a sale of any lot which had previously been sold to any other person. The defendant did not, as averred by his plea, know that this lot had been sold to the .ancestor of complainant; but he did know that, if such sale had been made, the power of the agent of the state had thereby been exhausted. The authority of the state’s agent depended on the fact of whether he had made a previous sale of this lot. If he had not, then he could sell to the defendant; if he had, then he was not .authorized to sell. The superintendent ^having, according to the authority conferred on him by the state, offered at public auction, and sold, this very lot, he had no authority from the state *308 to afterward sell the same lot, at private or public sale, to any body; and, therefore, the second sale was wholly unauthorized by law, without any authority as the agent from the principal to make the sale.
The law of caveat emptor, in such cases, applies with all its force to the purchaser. He buys at his peril. If the land had not been previously sold, he acquires title; if it had, he gets no title.
The state, in this case, so far from doing any act which would ratify the act of the agent, repudiates his authority, and authorizes' the governor to convey to the heirs of the first purchaser.
The state can act only by its agents, duly authorized by law; and where such agents, being (as in this case) mere ministerial officers, transcend their authority, their acts are void, or at least voidable by the state.
In the case of Stoddard et al. v. Chambers; 2 How. U. S. 284, where two patents had been issued by the United States for the same land, and the first in date be against law, it was held that it does not carry the legal title: that the-issuing of a patent is a mere ministerial act, and if it be issued for land reserved from sale by law, it is void.
If this lot in controversy had been reserved from sale, and a sale made by the superintendent, and a patent had been issued by the governor of Ohio for the same, the patent would have been void; and we see no good reason why, in this case, the patent issued for land not reserved from sale by the state, but actually sold by the state, should not likewise be void.
The plea in this case is overruled.